IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:21-CV-229-Z |
| | § | |
| XAVIER BECERRA, in his official capacity | § | |
| as Secretary of the United States Department | § | |
| of Health and Human Services, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants' Motion to Stay Proceedings (ECF No. 35) (the "Motion"). Having considered the parties' pleadings and the arguments made in the Court's preliminary hearing on December 2, 2021 (the "Hearing"), the Court **GRANTS** the motion and **ORDERS** that the proceedings in this case be stayed pursuant to the conditions precedent set forth in this Order.

During the Hearing, Defendants responded to this Court's Order dated December 1, 2021 (ECF No. 38) and explained *how* Defendants will comply with the "nationwide preliminary injunction" of the interim final rule, 86 Fed. Reg. 61,555-01 (Nov. 5, 2021) (hereinafter "CMS Vaccine Mandate") issued by the United States District Court for the Western District of Louisiana ("WDLA") on November 30, 2021. *See Louisiana et al. v. Becerra et al.*, No. 3:21-CV-03970, 2021 WL 5609846 (W.D. La. Nov. 30, 2021). Counsel for Defendants repeatedly stated and admitted to this Court that said "nationwide preliminary injunction" precluded Defendant from implementing or enforcing the CMS Vaccine Mandate against Defendants until further court action by either the (1) WDLA, (2) United States Court of Appeals for the Fifth Circuit, or (3) Supreme Court of the United States ("Intervening Court Action"):

- ▪ "Your Honor, I can convey to the Court that HHS/CMS has drafted language for a banner similar to that which the Court identified in Exhibit A of its order that was placed on a website controlled by OSHA, and HHS/CMS will place that — a similar banner with similar language in a prominent position on the CMS Public Health Emergency Landing Page and on the CMS Omnibus COVID Healthcare Vaccination Interim Final Rule External FAQ Website. This will notify the public of the preliminary injunction orders from the Eastern District of Missouri and the Western District of Louisiana and inform the public that CMS has suspended activities related to the implementation and enforcement of this rule pending future developments in the litigation." *See* Exhibit A at 7-8.

- ▪ "In addition, CMS/HHS has prepared a memo to State survey directors and accrediting organizations, using similar language as will be used in the banner previously referenced, and inform — the memo will inform surveyors — the State survey directors not to — not to enforce any standards related to this rule, and, as such, there will be no penalties for compliance with standards that are not being surveyed." *See* Exhibit A at 8.

Consistent with Defendants statements and admissions at the Hearing, this Court **ORDERS** Defendants to provide "notice" to all Medicare- and Medicaid-certified providers and suppliers — including all Texas providers and suppliers represented by Plaintiffs — that the CMS Vaccine Mandate will *not* be implemented or enforced until an Intervening Court Action.

Finally, Plaintiffs and Defendants are **ORDERED** to immediately notify this Court of an Intervening Court Action. At that time and without delay, this Court will immediately convene an emergency telephonic or virtual hearing to finally adjudicate the pending Motion for Preliminary Injunction (ECF No. 6), followed by written opinion and order.

**SO ORDERED.**

December 3, 2021.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

2

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT  OF TEXAS
 2                    AMARILLO DIVISION

 3   STATE OF TEXAS, et al.      §
                                 §
 4   VS.                         §
                                 §        CIVIL ACTION
 5   XAVIER BECERRA, in his      §
     official capacity as        §      NO. 2:21-CV-229-Z
 6   Secretary of the United     §
     States Department of Health §
 7   and Human Services, et al.  §

 8   =============================================================

 9                    REQUESTED EXCERPT OF
            TRANSCRIPT OF HEARING ON MOTIONS FOR STAY
10                AND PRELIMINARY INJUNCTION
           BEFORE THE HONORABLE MATTHEW J. KACSMARYK
11                UNITED STATES DISTRICT JUDGE

12
                       DECEMBER 2, 2021
13
                       AMARILLO, TEXAS
14
     =============================================================
15

16                    A-P-P-E-A-R-A-N-C-E-S

17

18   FOR THE PLAINTIFFS:     MS. CYNTHIA A. MORALES, and
                             MR. JOHNATHAN STONE, and
19                           MS. AMY WILLS
                             Office of the Texas Attorney General
20                           P.O. Box 12548, (MC-059)
                             Austin, Texas  78711
21
                                       AND
22
                             MR. LANDON A. WADE
23                           Office of the Attorney General
                             Law Enforcement Division
24                           300 W. 15th Street
                             Austin, Texas  78701-1649
25
```

Stacy Mayes Morrison
Official Court Reporter

```
 1   FOR THE FEDERAL          MR. JONATHAN D. KOSSAK
     DEFENDANTS:              United States Department of Justice
 2                            Civil Division, Federal Programs
                                 Branch
 3                            1100 L Street NW
                              Washington, D.C.  20530
 4

 5
     COURT REPORTER:          MS. STACY MAYES MORRISON
 6                            Official Court Reporter
                              205 E. 5th, LB #F13263
 7                            Amarillo, Texas  79101
                              (806) 672-6219
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings reported by mechanical stenography; transcript
25   produced by computer.
```

1                    VOLUME I (PAGES 1 - 34)

2                                                              <u>PAGE</u>

3    CAPTION/APPEARANCES................................................   1

4    INDEX.............................................................   3

5    PROCEEDINGS FOR DECEMBER 2, 2021..................................   4

6    DEFENDANTS' ARGUMENT ON MOTION TO STAY............................   6

7    PLAINTIFFS' ARGUMENT ON MOTION TO STAY............................  12

8    DEFENDANTS' RESPONSE..............................................  22

9    PLAINTIFFS' RESPONSE..............................................  27

10   PLAINTIFFS' EXHIBIT 1.............................................  33

11   REPORTER'S CERTIFICATE...........................................  34

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS FOR DECEMBER 2, 2021</u>

1

2    **(The following took place in open court with all parties**

3 **present.)**

4        **THE COURT**:  Please be seated.  The Court calls

5 Civil Action No. 2:21-CV-229, the State of Texas, *et al*

6 versus Becerra, *et al* for a hearing on pending Motions for

7 Stay and Preliminary Injunction.

8        Are the parties ready to proceed?

9        **MS. MORALES**:  Yes, Your Honor.  Cynthia Morales for

10 the State of Texas, along with Landon Wade, Johnathan Stone,

11 and Amy Wills, and we're ready to proceed.

12        **THE COURT**:  Okay.  And, Ms. Morales, did your team

13 provide their business cards to the court reporter for record

14 purposes?

15        **MS. MORALES**:  Yes, Your Honor.

16        **THE COURT**:  Okay.  Thank --

17        **MS. MORALES**:  We provided --

18        **THE COURT**:  -- you.

19        **MS. MORALES**:  -- information.

20        **THE COURT**:  And for the United States?

21        **MR. KOSSAK**:  Good morning, Your Honor.  Jonathan

22 Kossak on behalf of the Federal Defendants.  We are

23 prepared -- I am prepared to proceed.

24        **THE COURT**:  Okay.  Understood.  And thank you for

25 enduring the planes, trains, and automobiles required to get

1     here from Washington, D.C.

2            **MR. KOSSAK**:  No problem.

3            **THE COURT**:  Okay.  So I apologize for the late-

4     breaking order that was on file last night.  We had wall-to-

5     wall sentencing hearings on Tuesday, a marathon suppression

6     hearing on Wednesday that lasted until 6:00.  And that was

7     late-breaking.

8            Are the parties in receipt of that order and

9     prepared to argue the Motion to Stay?

10           **MS. MORALES**:  Yes, Your Honor.

11           **THE COURT**:  Okay.  And --

12           **MR. KOSSAK**:  Yes, Your Honor.

13           **THE COURT**:  Okay.  So this is my plan.  We will

14     bifurcate the hearing.

15           We'll first address the pending Motion to Stay, and

16     that will be responsive to the Court's order late last night.

17           Then, after that, we will move on the pending

18     Motions for Injunctive Relief.

19           Because the Government is the Movant on the first

20     order, I'll direct the United States to begin.  I intend to

21     spend about thirty minutes or less on the Motion to Stay.

22           And, Mr. Kossak, you can begin as the Movant on

23     that.

24           **MR. KOSSAK**:  Thank you, Your Honor.  Do you mind if

25     I stay here, or would you like me to go to the podium?

1    **THE COURT**:  In the age of COVID and virtual

2    hearings, everybody sort of got used to sitting at the table,

3    looking into a screen, reading into a microphone.

4        I am extremely flexible on courtroom decorum, so if

5    you are comfortable proceeding from counsel table, you may do

6    so.  If you're more comfortable at the podium, you may do so

7    also.

8        **MR. KOSSAK**:  Thank you, Your Honor, and I will -- I

9    think I'll do the Motion to Stay from here because I have

10   some notes that I --

11       **THE COURT**:  Absolutely.

12       **MR. KOSSAK**:  -- have scattered.

13       **THE COURT**:  I'm going to get a copy of last night's

14   order.  I'll have that for reference, and then you may

15   proceed.

16       All right.  Mr. Kossak, you are the Movant on the

17   pending Motion to Stay this in light of the injunction issued

18   in the Western District of Louisiana.  And you may make your

19   arguments on why this Court should stay the PI hearing and

20   then also PI relief in this case.

21       **MR. KOSSAK**:  Thank you, Your Honor.  As we

22   articulated in our Motion to Stay, the Western District of

23   Louisiana, in a nearly identical matter addressing the rule

24   at issue in this case, issued a nationwide preliminary

25   injunction on November 30th enjoining the Federal Defendants,

1　the HHS, and CMS from implementing or enforcing the rule at

2　issue in this case.  That ruling, that order covers

3　Plaintiffs in this matter.

4　　　There are numerous cases, as we identified in our

5　brief, that explain that the Court has discretion to stay

6　proceedings that are essentially duplicative and superfluous.

7　We believe that the Western District of Louisiana's order

8　renders this -- these proceedings related to the State's

9　motion duplicative and superfluous.

10　　　We understand the Court issued an order last night

11　on December 1st, 2021 asking the Defendants to state with

12　particularity how the named Defendants will comply with the

13　nationwide preliminary injunction of the interim final rule

14　issued by the United States District Court for the Western

15　District of Louisiana.

16　　　And the Court also stated that Defendants must

17　explain how Defendants will notify, update, or advise the

18　Medicare- and Medicaid-certified providers and suppliers who

19　must comply with the CMS Vaccine Mandate by December 6, 2021

20　that the CMS Vaccine Mandate will not be implemented or

21　enforced until further court order in that case.

22　　　Further, the Court stated Defendants must also

23　explain if Defendants are willing and prepared to delay the

24　effective date of the CMS Vaccine Mandate's penalties.

25　　　And, Your Honor, I can convey to the Court that

1   HHS/CMS has drafted language for a banner similar to that

2   which the Court identified in Exhibit A of its order that was

3   placed on a website controlled by OSHA, and HHS/CMS will

4   place that -- a similar banner with similar language in a

5   prominent position on the CMS Public Health Emergency Landing

6   Page and on the CMS Omnibus COVID Healthcare Vaccination

7   Interim Final Rule External FAQ Website.

8           This will notify the public of the preliminary

9   injunction orders from the Eastern District of Missouri and

10  the Western District of Louisiana and inform the public that

11  CMS has suspended activities related to the implementation

12  and enforcement of this rule pending future developments in

13  the litigation.

14          In addition, CMS/HHS has prepared a memo to State

15  survey directors and accrediting organizations, using similar

16  language as will be used in the banner previously referenced,

17  and inform -- the memo will inform surveyors -- the State

18  survey directors not to -- not to enforce any standards

19  related to this rule, and, as such, there will be no

20  penalties for compliance with standards that are not being

21  surveyed.

22          **THE COURT**:  Okay.  And you understand —— I'm sure

23  you can read between the lines of last night's order —— any

24  preclusive effect argued to this Court as a basis for

25  suspending action on preliminary injunction requests because

1  harm is not irreparable, that preclusive effect communicated

2  to this Court must also be communicated to the public so that

3  we don't have the federal government speaking out of two

4  sides of the mouth.  To the Court explaining that there is no

5  irreparability because we are suspending implementation and

6  enforcement for the duration of appellate review, but then on

7  websites, notices, tweets, and all other available government

8  materials, there are affected providers and employees who

9  understand that the deadline starts December 6th.

10        So is that the Defendants' attempt to reconcile

11  what they communicate to this Court and also to the general

12  public?

13        MR. KOSSAK:  Yes, Your Honor.

14        THE COURT:  Okay.  I'll just ask that you reduce to

15  writing what you just described to the Court.  And then if

16  this Court determines to issue an order staying this

17  proceeding, it will include an order to do what the

18  government has promised to do vis-à-vis websites, FAQs,

19  notices, any guidance memoranda documents.

20        Does the DOJ intend to present any updates to its

21  website?

22        I understand, having worked for DOJ, that you're

23  not an HHS attorney but instead work for the department.

24  Does the DOJ intend to present any notices, guidance

25  memoranda, advisory opinions, anything like that on its

1  website or its public domain documents?

2       **MR. KOSSAK:** Your Honor, I don't know the answer to

3  that at this time, but I will mark that down, and, in the

4  notice, we will -- the notice of what we're doing, what

5  HHS/CMS is doing, I'm happy to, you know, include any

6  information that the DOJ is planning to do.

7       **THE COURT:** Has the Civil Division or the Federal

8  Programs Division typically included any public announcements

9  on pending litigation during HHS mandate litigation that

10 culminated in the *Hobby Lobby* opinion, *Zubik v. Burwell*,

11 things like that?

12      I can't recall if the DOJ Civil Division or Federal

13 Programs Branch did any sort of public updating on that

14 status so that litigants and affected parties can monitor and

15 track the litigation.

16      **MR. KOSSAK:** Your Honor, respectfully, I don't know

17 the answer to that. That predated my time in Federal

18 Programs.

19      I do know that there's no -- there's no distinct

20 Federal Programs website versus a general DOJ website, so if

21 there was anything, it would be in the -- the Office of

22 Public Affairs would put together a notice, and it would be,

23 you know, for all -- for all of DOJ, but I don't know the

24 answer to that, Your Honor.

25      **THE COURT:** And thank you for yet another indicia

1   of age, that I am now old enough that I have attorneys who

2   cannot recall cases that I worked on as a practitioner, so --

3           **MR. KOSSAK**:  No, no, Your Honor.  I -- excuse me, I

4   recall the cases.  I just wasn't at Federal Programs at the

5   time.

6           **THE COURT**:  Well, that's the reason for the Court's

7   order last night.  Because there's so much injunctive

8   litigation percolating in multiple districts and multiple

9   circuits, I want to make certain that any preclusive effect

10   that is argued to this course -- to this Court and may be a

11   basis for precluding further action for the pendency of that

12   motion, that that also gets communicated to affected

13   providers, suppliers, employers, downstream contractors,

14   federal contractors so that the federal government isn't

15   speaking with two voices.

16           If the rule is not going to take effect in any

17   binding and enforceable way on December 6th, I want that

18   communicated to anybody who may be affected by that rule, and

19   specifically employees who may need to persuade their Human

20   Resources Department or their labor and employment attorneys

21   that the clock is not running on things like fines,

22   termination, employment action, things like that.

23           So if you communicate to the Court that we can wait

24   on the Fifth Circuit to adjudicate all of these cases

25   percolating, then you must also communicate that to the

1  general public and anybody who may be affected by the interim

2  final rule.  Is that understood?

3          **MR. KOSSAK**:  Understood, Your Honor.

4          **THE COURT**:  Okay.  And I think I have the

5  Government's argument on the pending Motion to Stay.

6          Ms. Morales, who will be arguing for the State of

7  Texas?

8          **MS. MORALES**:  I'll be arguing, Your Honor.

9          **THE COURT**:  Okay.  Ms. Morales, you may proceed.

10         **MS. MORALES**:  Thank you, Your Honor.  As we

11  indicated to the Court in our reply, certainly this Court is

12  not precluded from going forward on our motion for PI that we

13  filed earlier.  And whether the Court should stay the

14  proceeding calls for the exercise of judgment, which this

15  Court is certainly taking into consideration.

16         This Court's well aware that multiple injunctions

17  can, and have been, issued in other cases, and we certainly

18  contest the argument that we can't establish irreparable

19  harm.  One of the biggest concerns here is the fact that we

20  are not -- we are in a separate litigation.  We are not part

21  of the Louisiana case obviously.  We don't have any control

22  over what happens in the Louisiana case.

23         And while the CMS suggested that a -- that these

24  proceedings could be stayed, and then if something happens in

25  the Louisiana case, we could come back here, and the Court

 1   could rule, that still puts us in a situation where for some

 2   period of time Texas is not covered.  There is not a stay in

 3   place.

 4          And that is -- that is something that's -- allows

 5   us to remain in imminent harm and does not -- there is not

 6   going to be a preclusive effect at that point.  And so that

 7   is our primary concern, is our injuries are still going to go

 8   on during any sort of time period, because we are not part of

 9   that other case, and we don't know what will happen there,

10   and it's unknown what sort of time gap there would be.

11          DOJ certainly could agree to a permanent -- to a

12   preliminary injunction.  That would take care of this.  Or

13   DOJ could offer to provide some sort of protection in that

14   gap, but has not done so.

15          **THE COURT**:  Okay.  And having litigated and argued

16   cases during HHS mandate litigation, I understand the State

17   of Texas is concerned.  If the Court grants the Motion to

18   Stay and provides a requirement that the Government

19   communicate to all affected parties, providers, suppliers,

20   employers that the deadline is, in effect, suspended

21   effective now and for the duration of any litigation pending

22   in *Louisiana versus Becerra*, Case No. 3:21-CV-03970, 2021 WL

23   5609846, will that at least provide a pause to any

24   enforcement actions, any sort of penalties, and any sort of

25   employee terminations that might immediately start on the

1   effective date of December 6, and if the Government is not

2   complying with that preclusive pause, the State of Texas and

3   the Plaintiffs here are not prejudiced to come back to this

4   Court and ask for further relief?

5        Does that preclusive pause that the Court envisions

6   in the order filed last night and in my interaction with the

7   Government today, does that not give you -- at least until

8   the Fifth Circuit establishes a briefing schedule, expedited

9   briefing schedule, all of these appellate dockets that are

10   simultaneously percolating, does that not at least give you

11   that effective pause so that all of the parade of horribles,

12   irreparable harms don't start running on Monday?

13      **MS. MORALES**: It does provide a pause, and I

14   appreciate the Court mentioning the opportunity to come back

15   to the Court if CMS was not abiding by that.

16        But, as the Court has just pointed out, it only

17   provides that pause up until the time that the Fifth Circuit

18   takes some sort of action. And, of course, as we pointed out

19   in our reply or response, we do not take a position that

20   whatever the Fifth Circuit does is necessarily -- necessarily

21   determinative of what would happen with the ruling from this

22   Court on our particular PI. And certainly we would —— and

23   DOJ recognizes that —— want to go forward on our PI if there

24   was a need to do so, but --

25      **THE COURT**: Well, at the risk of summoning the

1  spirits of *Dobbs*, which was in the Twittersphere and in the

2  atmosphere yesterday, I know states have trigger statutes

3  that may be implicated by any ruling from the Court, and I

4  know triggering now has sort of an independent meaning apart

5  from litigation.

6         But, if the Court were to confine its -- if the

7  Court's order granting the pending Motion to Stay were to

8  make pellucidly clear that the Plaintiffs are not disallowed

9  from seeking to reinitiate or re-urge their motion, that the

10  Court is willing to give you an immediate, if necessary,

11  emergency hearing on the pending Motions for Preliminary

12  Injunction, if I were to include a paragraph that makes clear

13  that, when there is a decisive or dispositive appellate

14  result, that the State of Texas may immediately notify this

15  Court that it is time to restart this litigation --

16         And, by the way, because we -- because we don't

17  know exactly which vehicle the Fifth Circuit may choose to

18  use or whether they will consolidate pending cases, I

19  understand the Plaintiffs' concern.

20         If my order were to include language like that, in

21  essence, a -- a trigger provision that the moment the

22  Plaintiffs are aware of a dispositive Fifth Circuit appellate

23  event that affects the relief requested in this case, that

24  you will be allowed to immediately re-urge and restart this

25  litigation, if it included that paragraph, would that satisfy

1  the Government's concerns at least between now and whenever

2  that appellate process hits that triggering point?

3       MS. MORALES:  Largely, but there are two -- two

4  sections -- two points that I have some concern remaining.

5       THE COURT:  Okay.

6       MS. MORALES:  The first is that there isn't any

7  assurance from CMS that they won't try to take some sort of

8  action or that there won't be confusion among the public

9  about the enforcement of the mandate between -- no matter how

10  quickly the Court might move, there still is going to be some

11  sort of gap.

12       And, as I mentioned before, CMS has not said, we

13  are willing to suspend it until this Court makes a ruling

14  under that emergency basis.  That is -- you know, there's

15  still a gap, and it's going to cause concern among providers

16  and others that are determining what do we do now if they

17  hear that the stay has been lifted.  So that's the first

18  thing.

19       THE COURT:  And this was -- this was a recurring

20  pattern during prior HHS mandate litigation where different

21  district courts and different circuits were percolating on

22  pending motions, cases, and appeals.

23       If the Court can achieve some agreement with the

24  Defendants in this case that they will frame the language to

25  make certain that all the public message boards, websites,

1   FAQs, you know, all the sort of administrative state notices
2   reflect that action is suspended, and that the Defendants
3   take no steps to implement or enforce until further court
4   order, if we're able to negotiate language that makes certain
5   that the Defendants in this case advertise that point and
6   publish that point and notice that point everywhere they use
7   public notice websites or alerts or e-mails, if we're able to
8   negotiate a concession from Defendants that they will, in
9   fact, do that with all deliberate speed, would that satisfy
10  the Plaintiffs' concern?
11          MS. MORALES:  Um, I have a question of
12  clarification, Your Honor.  Which court order?
13          THE COURT:  So, here, if you look at Document No.
14  38, which is the late-breaking order that the Court is
15  referring to --
16          MS. MORALES:  Uh-huh.
17          THE COURT:  -- it is the Court's intention, if this
18  Court grants the Defendants' Motion to Stay, to state with
19  specificity that further court action must take place in
20  *Louisiana versus Becerra* —— that is the Western District of
21  Louisiana case —— and that it is specific to the Interim
22  Final Rule 86 FR 61,555.
23          Understanding that there's so much percolation in
24  so many divisions, the Court does intend to propose a
25  narrowly-tailored definition that makes clear that, until

1    there is appellate review or relief in that case, all rules

2    are suspended; they will not be enforced; any penalties are

3    not assessed until the Fifth Circuit decides the case or at

4    least has an intervening order that explains how appellate

5    review will happen.

6          Understanding that everybody is navigating an

7    immense fourth headless branch bureaucracy that includes

8    multiple websites, multiple government agencies — you have

9    the Department of Justice involved; you have HHS; you have

10   the Federal Programs Branch; I understand it's very difficult

11   to make the leviathan speak with one voice — but, to the

12   greatest extent possible, this Court were to make very clear

13   that the Government must communicate in all the vehicles

14   available to it that this action -- or this interim final

15   rule is suspended and will not take effect, and whether that

16   effect is fines, enforcement penalties, if we can do

17   something reminiscent of what OSHA did in Exhibit A, and the

18   State of Texas can be satisfied by the language appearing in

19   such notice, will that give you the assurance you need to

20   stay this proceeding until we better understand how the Fifth

21   Circuit is going to adjudicate that Western District of

22   Louisiana case?

23         And I think you were on point one.  I didn't want

24   to prevent you from making point two, but this is the give

25   and take of oral argument.

1      **MS. MORALES**:  Yes, Your Honor.  And I am -- and I

2    will try to wrap up point one.  I still remain -- and the

3    reason I asked for the clarification on which order is

4    because I understand you're referring to the -- an order

5    related to the Louisiana rule.

6           My concern is, let's say the Louisiana -- just as a

7    hypothetical, the Louisiana rule comes down on a Friday

8    afternoon, some sort of overturning of that.  This Court sets

9    this for an emergency hearing, you know, Monday.  A fear --

10     **THE COURT**:  Over the weekend -- over the weekend,

11   Franciscan Hospital fires 60 employees, all of whom have

12   submitted some sort of employment notification that they

13   intend to decline the vaccination or whatever jab protocol

14   there is.  That's the concern?

15     **MS. MORALES**:  Yeah.  We're trying to make sure that

16   our -- you know, we're here to try to get an injunction to

17   make sure that our -- our, you know, interests are protected

18   during this time period.

19          And my concern is that, unless DOJ -- excuse me,

20   unless CMS, you know, agrees that, until a further order from

21   this Court, it will not take any sort of action, our concern

22   would remain.

23     **THE COURT**:  I understand your concern now.  That

24   sort of clarifies the concern the Plaintiffs have here.

25          All right.  So you may move to your second point.

```
1   I have your argument on that.
2           I served in the Appellate Division, and I hated
3   oral argument interruptions; although, they happen almost
4   immediately.  So please forgive me if I continue to
5   interrupt.  This probably feels more like an appellate
6   hearing, but --
7           MS. MORALES:  Your Honor, I've spent many years
8   doing appeals, so I'm quite comfortable with it.  Thank you,
9   Your Honor.
10          THE COURT:  Okay.  Okay.  Well, I always had a
11  nice, pretty outline ready to go on the podium when I
12  traveled to New Orleans, and within two minutes of "may it
13  please the Court," I was interrupted.  And so I had to learn
14  that as a baby attorney, so I don't -- I don't mean to
15  interrupt your train of thought or arguments you intend to
16  make.
17          You may proceed with that second point.
18          MS. MORALES:  Um, our second point, of course, Your
19  Honor, is simply that we can avoid all of that by just simply
20  going forward and getting -- we are here.  We are prepared.
21  The Court is fully briefed.  And something -- I'm less
22  concerned if the Court has a -- fashions it as we just talked
23  about, but, as long as there is a gap, there's always things
24  that could happen.  I -- things can happen over the holidays.
25  Things can happen to individuals.  And we're already all
```

1  here.  We're already all briefed.  We're already all prepared

2  to go forward.

3       **THE COURT**:  Okay.  I understand that.  And I think

4  I have your arguments on the Motion to Stay.

5       Just briefly, in response to Ms. Morales and her

6  arguments, Mr. Kossak, if -- if this Court were to prepare

7  that final paragraph indicating that the relevant triggering

8  event is an action by this Court in addition to the Fifth

9  Circuit, would the affected Defendants be willing to post

10  language to that effect?  Do you --

11       **MR. KOSSAK**:  I'm sorry, Your Honor.  I think I'd

12  need a little more clarity on what you mean by -- by

13  triggering and --

14       **THE COURT**:  Well, I think there is -- there's some

15  confusion about the triggering event.  Is it a briefing

16  notice from the Fifth Circuit?  Is it an order on

17  consolidation?

18       Like, there are basically three Article III

19  entities that are managing this litigation — and, by this

20  litigation, I mean cases challenging the CMS Vaccine Mandate

21  — relevant here:  The Western District of Louisiana, the

22  Northern District of Texas, and then, of course, the Fifth

23  Circuit.

24       What is the event that would trigger this Court's

25  expedited review of the pending Motion for Preliminary

1    Injunction so that the Plaintiffs get the relief they

2    consider?  What language would ensure that, whenever the

3    preclusive effect of that Western District of Louisiana

4    nationwide injunction evaporates because the Fifth Circuit or

5    the Western District of Louisiana took some action, how will

6    they know that it is time to now re-urge the Motion for

7    Preliminary Injunction so they can get that immediate

8    injunctive relief, if necessary?

9          **MR. KOSSAK**:  Well, Your Honor, as long as the

10   Western District of Louisiana's preliminary injunctive order

11   is in place, which it would be unless the Fifth Circuit

12   vacates it on appeal, and, you know, whether, you know,

13   approving the Government's Motion to Stay or, you know,

14   taking the matter up and vacating the order entirely, until

15   either of those events occur, the Western District of

16   Louisiana's injunctive -- preliminary injunction order

17   remains in place.  And so the triggering event is some sort

18   of vacating of that order by the Fifth Circuit.

19          **THE COURT**:  Okay.  So let me do this --

20          **MR. KOSSAK**:  And, Your Honor, I'm sorry to

21   interrupt.  May I sort of respond briefly to the State's

22   concerns?

23          **THE COURT**:  Yes, you may.  And then we'll start

24   with arguments on the pending PI after you complete that.

25          **MR. KOSSAK**:  Your Honor, so, in order to show

 1    irreparable harm, you have to -- the State has to show sort

 2    of imminent injury.  All that the State referenced just now

 3    is speculation about when the Fifth Circuit is going to issue

 4    an order, when that will have effect, how the agency will

 5    respond, whether the agency has even the capacity to enforce

 6    a rule that comes back into effect immediately, whether that

 7    will be on a Friday or a Monday.  There's -- it's completely

 8    speculative.

 9         And that's not the sort of irreparable harm that

10    the State is required to show, and for -- and, specifically,

11    the agency, you know, as you mentioned, is a large

12    bureaucracy.  It takes time to move things, and there's no

13    indication -- Texas has set forth no evidence that HHS or CMS

14    will be able to snap to immediately and issue and enforce --

15         **THE COURT**:  And administrative law generally

16    provides certain presumptions of compliance by federal

17    officers and those who take an oath in the Article II Branch

18    to faithfully execute the laws, so, here, you are also

19    allowed to rest on some of those defaults in administrative

20    law.  So I understand that point.  Continue.

21         **MR. KOSSAK**:  Your Honor, it's also the case that,

22    you know, we fully briefed the issues.  There will be oral

23    argument on the issues as we speak.

24         You know, if -- if an order vacating comes down,

25    and the Court -- you know, we're fully prepared to adjudicate

1    the preliminary injunction motion filed by Texas, so that

2    there really need not be any delay or emergency hearings.

3    We'll already have had it.

4          And, further, you know, the notion that Texas is --

5    that Texas has identified unique information, well, this is a

6    record review case.  This is an APA record review case.  So

7    the record remains the same whether we're in the Western

8    District of Louisiana or the Northern District of Texas.  And

9    the Fifth Circuit, however it rules, is going to rule on the

10   record and the sort of legal issues presented to that Court,

11   and that is going to have binding effect on this Court.

12         So there's no -- there's no sense in which, you

13   know, there would need to be a new hearing by this Court

14   related to the preliminary injunction issue once the Fifth

15   Circuit rules.

16         **THE COURT**:  Okay.  I have your argument.  And I

17   have one question that was noticed in last night's order.

18   The United States -- or I should say the Defendants should be

19   prepared to discuss suspension or a delay of the effective

20   date of the CMS Vaccine Mandate and any penalties.

21         So an HHS mandate litigation terminating in the

22   *Hobby Lobby* opinion from the Supreme Court or the *Zubik*

23   opinion from the Supreme Court, it was the running clock on

24   penalties and fees that was essential to the Plaintiffs' harm

25   analysis, the Plaintiffs' harm claims.

1        So if you -- if you analogize to a running clock of

2    penalties and fees, I don't think we have the same fee

3    structure here, but we do have employment effects that have

4    the effect of a penalty.  If the Defendants are prepared to

5    assure the Court or state with binding and preclusive effect

6    that the federal government will delay the effective date of

7    the CMS Vaccine Mandate, you know, that might give the Court

8    additional assurance that it may grant this Motion to Stay

9    without the parade of horribles accruing to the disadvantage

10   of the Plaintiffs.

11        And I specifically referenced on Page 2 of last

12   night's order the White House Safer Fed. Workforce Task Force

13   update, and then I provided a link.  There, in the OSHA

14   mandate litigation, the White House announced a delay of the

15   effective date.  It was often reported as a suspension or

16   withdrawal or repeal of the mandate, but, upon further

17   investigation, it appears that it was more accurately

18   described as a delay.

19        And I understand the OSHA litigation is a bit

20   different in the consequences and also the ability of the

21   Article II Executive Branch to manage compliance with federal

22   employees within its chain of command.  Understanding that

23   distinction, are Defendants prepared to announce a delay

24   similar to the delay announced in the OSHA litigation?

25        **MR. KOSSAK:**  Well, Your Honor, as long as the

1   injunctive order, the preliminary injunction order is in

2   place, they're -- obviously, the effective dates are delayed;

3   they're suspended.

4           So I don't know if Your Honor is looking for more

5   than that, such as like a promise from the Government that it

6   will -- if the order is vacated, there will be a further

7   delay, and I'm not prepared to answer that question.

8           **THE COURT:**  Okay.  You're not prepared to state

9   what the White House will do?  I'm -- that's a joke.

10          **MR. KOSSAK:**  Okay.

11          **THE COURT:**  Every DOJ --

12      **(Laughter.)**

13          **MR. KOSSAK:**  Sorry, Your Honor.

14          **THE COURT:**  Every DOJ attorney and every AUSA in

15  history understands, when you represent the United States of

16  America, you have to be very cautious about stating anything

17  that might have -- that might misrepresent what one agency

18  intends to do versus another agency, so that's the reason for

19  the joke.

20          But this also sort of reflects the complexity

21  conundrum that the Plaintiffs face.  Here we have the White

22  House, HHS, CMS, DOL, OFCCP, the alphabet soup of

23  administrative state agencies who do not necessarily speak

24  with one voice when deadlines and penalties are imminent.

25  And, in litigating the Motion to Stay, that's the Court's

1    primary concern.

2            To the greatest extent possible, if you tell this

3    Court that the WDLA litigation and the injunction issued

4    therein has preclusive effect sufficient to suspend this

5    Court's adjudication of all the PI factors, then you also

6    must say that with one voice in every public notice,

7    publication, FAQ, everything that human resource departments

8    and labor and employment attorneys look to to discern best

9    practices for compliance.  That's the reason for last night's

10   order.

11           I am inclined to grant the Motion to Stay for all

12   the reasons argued by the Government and just the ancillary

13   reason of percolation of cases up to the circuits, but I

14   acknowledge the Government has a very good point.  If there

15   is a White House action, if there is an HHS action, if there

16   is a CMS action that triggers penalties and enforcement, then

17   they're at a bit of a loss, and I just want to make sure

18   that, if we are going to pause this litigation, that the

19   federal government will speak with one voice on the

20   preclusive effect.

21           MS. MORALES:  Your Honor, we do have one more

22   concern if the --

23           THE COURT:  Ms. Morales, you may move on to that.

24           MS. MORALES:  Um, because I don't know if I've

25   expressed that clearly, the -- we're not -- I understand the

1    explanation regarding the triggering effect, but we have a

2    second problem when it comes to how the -- not just whether,

3    you know, Franciscan Hospital is going to fire people over

4    the weekend, but, you know, actions that might take place by

5    employees or confusion that's going to take place across the

6    state and with state agencies.

7         And the Government -- I have not yet heard CMS

8    state that they would be willing to agree not to implement or

9    enforce the mandate in Texas following some sort of action by

10   the Fifth Circuit or the Louisiana District Court until this

11   Court rules.

12        I understand the Court -- this Court would rule

13   with all due speed, but what would -- as we're trying to look

14   out for the interests of Texas and Texans, we would want to

15   make sure that they were covered for that time period, so it

16   was -- so that it was clear for the public, so the Texan

17   public would not be concerned about, oh, I've just seen in

18   the news that the Louisiana thing came out; we are not

19   covered anymore, because they would not --

20        You know, so if we could get an agreement from CMS

21   that -- and they would include language that would indicate

22   that this would -- that, for Texas, this would not -- this

23   would continue to not be enforced notwithstanding something

24   that happens in the Fifth Circuit until this Court rules,

25   then I think that would alleviate that concern.

1      THE COURT:  Okay.  So I'll state this for the

2  record, and then it can be quoted back to this Court either

3  by the Plaintiffs or the Defendants:  If this Court issues an

4  order granting the Motion to Stay —— this is a little bit

5  like legislative history —— it is the Court's intention that

6  that have preclusive effect vis-à-vis all of the entities

7  represented by Plaintiffs in this case, including all

8  downstream employers, providers, practitioners, physicians,

9  nurses, and contractors.

10      I can make it -- like drafting a contract, I can

11  make it as detailed and specific, but if this Court does

12  grant the Motion to Stay, it is the Court's intention that,

13  whatever notice is required of the federal government, it

14  will have absolute preclusive effect as to the State of Texas

15  entities represented by the Plaintiffs in this case.  I will

16  state that for the record.  And if this Court does issue that

17  order, it is the Court's intention that it have that effect.

18      MS. MORALES:  The Court has made that abundantly

19  clear, and I thank the Court for that.

20      My concern was the confusion that might occur.

21  It's a temporal thing.  It's not who's covered.  It's a

22  matter of, what I call, the gap.

23      THE COURT:  Right.

24      MS. MORALES:  And I -- and I apologize if I've not

25  followed this correctly, but it seems to me --

1          **THE COURT:**  Oh, I personally represented

2   similarly-situated Plaintiffs in similar HHS litigation, and

3   I've navigated the Federal Register, then the CFR, the rule-

4   making process, and all the ambiguity that that byzantine

5   process imposes on clients.  I think I am apprised of your

6   concern, and I have personally experienced the concern as a

7   practitioner.

8          So I have your argument.  I have your papers.  And,

9   unless there is more on the second point, or any additional

10  points, I am prepared to move to argument on the PI.

11         Ms. Morales, is there anything else you need to add

12  for record purposes or otherwise for this Court's

13  adjudication of the Motion to Stay?

14         **MS. MORALES:**  Simply for record purposes.

15         **THE COURT:**  Please do.

16         **MS. MORALES:**  We do want to put on the record that

17  we do not agree that this case ultimately when it's decided

18  by the Fifth Circuit is simply an Administrative Record case,

19  because, in terms of the preliminary injunction, there's

20  additional evidence that can be offered on imminent harm and

21  other prongs.  And that's it for the record, Your Honor.

22         **THE COURT:**  Well, every APA record case descends

23  into a prolonged fight over the definition of the record and

24  what may be supplemented or added to it.  I know several big

25  law attorneys make a lot of money spending months finding --

1  fighting and trying to define the denominator of the record.

2          So I understand that point.  I find that it is

3  preserved, and that the Plaintiffs in this case have not

4  waived any argument regarding the extent of the record and

5  how this litigation need be decided under the various claims

6  that are filed in this Court.

7          Okay.  We will now proceed to the second part of

8  this hearing.  And so that the Court is fully prepared to act

9  on the pending Motion for Preliminary Injunction, should

10 those exigencies present, I will now allow the parties thirty

11 minutes per side to argue the pending Motions and Responses

12 to Preliminary Injunction.

13         And because the Plaintiffs in this case are the

14 Movant, Ms. Morales, who will be arguing for those

15 Plaintiffs?

16         MS. MORALES:  Your Honor, I will be arguing -- I

17 will be arguing the substantial likelihood of success and --

18 on the merits, and Mr. Wade will be arguing the other three

19 prongs.

20         THE COURT:  Okay.  And how do you intend to divide

21 your time, and do you intend to hold back any for rebuttal?

22         MS. MORALES:  I'd like to hold back five minutes

23 for rebuttal.

24         THE COURT:  Okay.  I'll instruct my law clerks to

25 run the chess clock accordingly.  You have twenty-five

1    minutes for the initial Movant arguments, and you may divide

2    your argument as you described, first Ms. Morales, followed

3    by Mr. Wade.

4             **MS. MORALES**:  I do have one housekeeping matter

5    that I wanted to take up with the Court before we started.

6             **THE COURT**:  Okay.

7             **MS. MORALES**:  We do have -- of course, the Court

8    already has before it our appendix and all of the affidavits

9    and other things that we have submitted to the Court.

10           We do have one exhibit that we wanted to offer into

11    evidence, and I have a copy for the Court.  I have a copy for

12    counsel.  And this exhibit is a sampling of comments that

13    have been made on this rule, and we're offering it for the

14    purpose of the Court's consideration on imminent harm.

15           They are a government record.  They were solicited

16    or they're coming through as part of the comments on this

17    rule, and we thought it would be helpful to the Court.  We

18    have cited into our briefs.  We've given the Court the

19    citations.  The Court can look at things themselves.

20           However, we thought it would be helpful for the

21    Court to have a sampling, and so we have that for the Court.

22           CMS is opposed to the exhibit, and -- you know, but

23    we feel it's appropriate for the Court and certainly within

24    the Court's discretion in the realm of a PI hearing.

25           **THE COURT**:  Okay.  So please approach with the

1    Court's copy.

2            Is this marked as -- should this be marked as

3    Plaintiffs' Exhibit A for this hearing?

4            **MS. MORALES:**  I think we've marked it as 1, but --

5            **THE COURT:**  Exhibit 1.

6            **MS. MORALES:**  -- we can certainly mark it as A at

7    the Court's convenience.

8            **THE COURT:**  Okay.  So consistent with your

9    housekeeping request --

10           **MR. KOSSAK:**  Your Honor, may I have a chance to --

11           **THE COURT:**  Yes.  I'm going to give the parties a

12   five-minute break so that they can prepare their

13   thirty-minute segment of argument on the PI hearing.

14           In the interim, I'll briefly review Exhibit 1.

15   I'll give you an opportunity to argue your objection to its

16   admission.

17           This is the nature of interim final rule

18   litigation.  Sometimes the typical pattern for arguing agency

19   record is a bit out of chronology, so I understand the

20   administrative law delicacies of that.

21           I will review Exhibit 1 during that five-minute

22   break.  I'll make a ruling.  I'll allow the Government to

23   make their objection to Exhibit 1.  And then we'll proceed

24   with arguments according to the schedule that I described.

25           So let's take a fifth-minute break.  We'll prepare

1    for the ruling on Exhibit 1 and then move directly into the

2    parties' arguments on the preliminary injunction motions

3    pending.

4            **COURT SECURITY OFFICER:** All rise.

5    **(Recess.)**

6    **(End of requested excerpt.)**

7

8

9

10

11                    *  *  *  *  *  *

12

13

14

15

16      I certify that the foregoing is a correct transcript

17    from the record of proceedings in the above-entitled matter.

18    I further certify that the transcript fees format comply with

19    those prescribed by the Court and the Judicial Conference of

20    the United States.

21

22    s/Stacy Mayes Morrison          12/3/2021
        Stacy Mayes Morrison           Date

23    Official Court Reporter

24

25